IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HAOYANG YU, *et al*. | No.  19-cr-10195-WGY |

**MOTION IN LIMINE TO EXCLUDE EVIDENCE**
**RE LEGAL MATTERS CONCERNING EXPORT CONTROLS**

Pursuant to Fed. R. Evid. 401, 403, 701, 702, and 703, Defendants Haoyang Yu and Tricon MMIC, LLC respectfully request that the Court exclude evidence, including testimony by Carlos Monroy, an official with the Department of Commerce's Bureau of Industry and Security ("BIS"), about the meaning of the Export Administration Regulations, 15 C.F.R. Part 730 *et seq.*; the purpose of those export regulations; and their purported application to the MMIC-related "technology" in this case. Such testimony on matters of law is plainly improper, and even if the evidence were admissible, its limited probative value would be greatly outweighed by the risk of unfair prejudice.

At trial, in support of the export charges, the prosecution states that it will call Monroy (1) to summarize, explain, and interpret export regulations; (2) to opine that the MMICs at issue, TM5051 and TM5052, were "controlled" or classified as ECCN 3A001 and, therefore, that the Graphic Design Systems II files ("GDS files") associated with those chips were also "controlled" or classified as ECCN 3E001, and (3) to describe the general purpose of export law (*e.g.*, to promote national security, to prevent nuclear proliferation, etc.) especially as it pertains to "dual-use" items that serve civilian purposes but may also have military applications. *See* Ex. A (A. Beck Letter (Dec. 6, 2021)) at 1-2.

1

Only this Court can instruct the jury on the relevant laws and regulations, and as an expert witness, Monroy may not usurp that role. *See* Fed. R. Evid. 702, 703. "Expert testimony proffered solely to establish the meaning of a law is presumptively improper." *United States v. Mikutowicz*, 365 F.3d 65, 73 (1st Cir. 2004) (citing *Nieves-Villaneuva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge."). "The judge's knowledge of the law makes an expert's legal opinion at best cumulative and at worst prejudicial when presented to the jury." *Moral v. UBS Fin. Servs.*, No. 08-1833 (PAD), 2014 U.S. Dist. LEXIS 203633, at *5-6 (D.P.R. Dec. 3, 2014). Thus, the prosecution may not put Monroy on the stand to summarize, explain, and interpret the EAR. Nor may Monroy recite definitions of relevant terms, such as "technology," directly from the Code of Federal Regulations.

To the extent that the prosecution intends to have Monroy testify to his expert opinion that the MMICs at issue, TM5051 and TM5052, or associated "technology," such as GDS files, were controlled by the EAR and, therefore, that exports to Taiwan required licenses, it has failed to comply with Fed. R. Crim. P. 16(a)(1)(G). The prosecution has provided only a general summary of Monroy's anticipated testimony, but it has not described the "bases and reasons" for his opinions. *See United States v. Mahaffy*, No. 05-cr-613 (ILG), 2007 U.S. Dist. LEXIS 30077, at *8 (E.D.N.Y. Apr. 24, 2007) ("Even if the disclosure provides a sufficient summary of any opinions to be offered by the witness, it may be excluded if [the disclosing party] 'has made no attempt at all to describe the bases and reasons for those opinions as required by [Rule 16(a)(1)(G)].'") (quoting *United States v. Wilson*, 493 F. Supp. 2d 484 (E.D.N.Y. 2006) ("It is well-settled that a court may in its discretion preclude expert examination . . . regarding topics or opinions not properly disclosed.")). For example, it has not explained why Monroy believes that the MMICs at

issue are classified under ECCN 3A001 or that the GDS files used to manufacture them are classified under ECCN 3E001, or what about his supposed "review of the specifications sheets describing Tricon parts TM5051 and TM5052" led him to reach his conclusions.

Finally, there is no reason for Monroy, or any other witness, to testify that the purpose of export controls is to protect U.S. national security. Put simply, not every unlawful export case is a *national security* case. Here, neither Mr. Yu nor Tricon are charged with exporting any actual MMICs, and sending GDS files to WIN Semiconductors in Taiwan, the same foundry used by Analog Devices, Inc. and numerous other U.S. semiconductor companies, did not threaten U.S. national security, especially where WIN was subject to a strict non-disclosure agreement, already possessed all the relevant technology, and did not use the files for any purpose other than manufacturing chips that it returned to Mr. Yu and Tricon. Moreover, the MMICs at issue are commodity electronic parts that are available around the world at relatively low cost. Like batteries or screws, MMICs *could* be used for some military application, but that hypothetical possibility does not implicate any meaningful concern about national security here. This case bears no resemblance to *United States v. Shuren Qin*, 1:18-cr-10205-DJC (D. Mass.) (defendant illegally exported sophisticated items with applications in anti-submarine warfare to Chinese military university), or *United States v. Sihai Cheng*, No. 1:13-cr-10332-PBS (D. Mass.) (defendant illegally exported specialty parts for gas centrifuges used to produce weapons-grade uranium to Iranian company involved in nuclear program), in which the defendants were charged (and ultimately convicted) of exporting military technologies to foreign adversaries, thereby threatening U.S. national security.

The obvious reason for the prosecution to trumpet the *potential* military application of "dual-use" technologies, such as MMICs, is to unfairly prejudice the jury against Mr. Yu and

Tricon. Absent evidence that WIN used the charged GDS files for any military purposes, evidence that MMICs might conceivably be used for such purposes is completely irrelevant, and its probative value (if any) is substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 401, 403. In a drug prosecution, for example, the prosecution is not permitted to call a DEA witness to wax eloquent about the history of the drug war and the horrors of heroin or cocaine. Nor can it call an ICE witness in an illegal re-entry case to talk about the burdens that undocumented individuals impose on the U.S. economy. A criminal trial must turn on the actual facts of the particular case, not the underlying policies that may have motivated Congress to enact the criminal laws in the first place.

For the foregoing reasons, Defendants Haoyang Yu and Tricon MMIC, LLC respectfully request that the Court exclude evidence, including testimony by Monroy, about the meaning of the Export Administration Regulations, the purpose of those regulations, and their purported application to the MMIC-related "technology" in this case.

Respectfully submitted,

**HAOYANG YU and
TRICON MMIC, LLC**

by their attorneys,

       */s/ Daniel N. Marx*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

Dated: December 14, 2021

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 14, 2021.

                                                */s/ Daniel N. Marx*